IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 7:22cv00667 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| CPT. GILBERT, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a Virginia prisoner proceeding *pro se*, filed a civil rights action in this court in April 2021, *Williams v. Gilbert*, No. 7:21cv00222. It was subsequently dismissed—and then reopened—on two separate occasions, and it has since been dismissed. The case is currently before the Fourth Circuit on appeal. After one of the earlier dismissals, which occurred after Williams had failed to file his second amended complaint by the court's deadline, the court received from Williams a document he titled as his "second amended complaint." *Williams*, No. 7:21cv00222, ECF Nos. 47, 50. In reopening the case after that dismissal, the court noted that the document in fact contained ten separate complaints. *Williams*, No. 7:21cv00222, ECF No. 50. The court thus severed each of the complaints into a separate case, and this case was created from the complaint Williams had titled "Complaint 4." (*See* Compl., Dkt. No. 1.)

The complaint is now before the court for review, pursuant to 28 U.S.C. § 1915A(a), which requires the court to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted).

For the reasons discussed herein, the court concludes that some of Williams's claims fail to state a valid claim under § 1983 and must be dismissed. As for the remaining claims, the court, by separate order, will direct service of Williams's complaint on the remaining defendants.

I.  BACKGROUND

Williams's complaint names five defendants: Cpt. Gilbert, Cpt. Franklin, Lt. Barton, Sgt. Hall, and Unit Manager Eric Miller. (Compl. 2, Dkt. No. 1.) It describes an incident that began on January 27, 2020, between 6:00 and 7:00 p.m., in which Williams set two items of clothing on fire in his cell. In the later part of that hour, he was removed from his cell by Correctional Officer Hall and Barton. Sgt. Hall and Franklin entered the pod and stood with Williams while C/O Hall put out the fire. (*Id.* at 3.)

Franklin asked him why he set the fire, and Williams "notified him of the unlawful and unconstitutional treatment" that he was being subjected to by Miller, and Williams stated that he needed to be moved to another building. The complaint nowhere identifies, however, what acts Williams contends were "unconstitutional treatment" by Miller. (*Id.*) Williams was taken to the shower and strip-searched by several officers. Franklin went into an office to call Miller, but then came to the shower and asked Williams again why he had set fire to his clothing, and Williams "reiterated his grievances." (*Id.*) Franklin then told Sgt. Artrip to search Williams again. During this second search, a weapon was found on Williams's person. (*Id.* at 3–4.)

Williams was then removed from the B-4 shower wearing nothing but boxers and escorted to B-3 pod. He claims that, during the transport, he was exposed to "below 20 degrees weather" while walking between pods. (*Id.* at 4.) He was then placed in 4-point restraints and placed inside cell B-201, which had "no mattress, suicide smock, or suicide blanket." (*Id.*)

Between 9 and 10 p.m., Franklin and Sgt. Hall came to the cell and questioned Williams about the weapon. When Williams refused to answer their questions, Franklin directed that

2

Williams be left in the cell and given "a couple more hours to think about it." (*Id.*) About an hour later, Sgt. Barton made a round in the pod and Williams asked when he would be removed from 4-point restraints. Barton responded that he did not know, but noted that Franklin "didn't like your answer!" (*Id.*)

Sometime between 11:30 p.m. and 1 a.m., the air conditioner was turned on. Williams got very cold and began to shake uncontrollably. He notified unidentified floor officers that he was experiencing hypothermia and losing control of bodily functions, and he asked to see a nurse. He then began to kick the door and scream for help because his feet "began to burn and sting" from the cold, and he continued "shaking uncontrollably." (*Id.* at 5.)

At approximately 2 or 3 a.m., Franklin and Sgt. Hall came to the door and asked again about the weapon that Williams had possessed. Williams explained that the weapon had been made from a clock, and he confessed that he had bought it, but he told them he did not know the name of the person from whom he had purchased it. After receiving that answer, Franklin directed that Williams be removed from restraints after they let out the kitchen workers, which occurred between 4:30 and 5:30 a.m. (*Id.*) Williams does not indicate whether the air conditioning was turned off after this visit. Assuming it was, and based on the approximate times he has provided, it is possible that he was in the cold air-conditioned cell—without blankets or clothes—for as long as six hours (11:30 p.m. until 5:30 a.m.). The total time he was in four-point restraints was—at most—about ten hours (from 7:30 p.m. until 5:30 a.m.).

As a result of the fire he set and his possession of the weapon, neither of which he denies, Williams was charged with multiple disciplinary offenses. Ultimately, he was convicted of a single charge and was penalized with a $33.00 fine. He does not identify any other penalty. (*Id.* at 6.) Williams also alleges that despite the fact that he was "only charged with a 104

3

infraction," he was "transferred to a long-term segregation unit" without a formal hearing or notification. (*Id.*)

In setting forth his legal claims, Williams asserts that Defendant Franklin violated his Eighth Amendment rights by exposing him to cold weather in nothing but a pair of boxers and by turning up the air conditioner and "using the harsh temperature as a torture tactic to ascertain information about a weapon." He claims this exposed him to hypothermia and other unspecified "physical ailments." The court construes his claim as challenging both Franklin's decision to transport him in the cold in his boxers and his decision to keep Williams in four-point restraints for a total of up to ten hours, with at least some of those hours being in a very cold cell without blanket or clothes.

Williams also faults Franklin for failing to "protect him" from the actions of Unit Manager "Larry Collins," although he does not specify what those actions were.[1] He also alleges that Franklin violated his Fourteenth Amendment due process rights, although he does not explain if that is related to his disciplinary charges or his transfer. (*Id.* at 7.)

Williams asserts that Cpt. Gilbert, Hall, and Barton all should be held liable for violating his Eighth Amendment rights because they witnessed Franklin's illegal action and failed to correct his misconduct. (*Id.* at 7, 8.)

As for defendant Eric Miller, Williams claims that he violated Williams's First Amendment rights by instructing his subordinate officers in B-building to obstruct access to the grievance process and to retaliate against Williams when he attempts to file lawsuits. Miller also "encourages a culture where [Williams] is oppressed by other offenders." (*Id.* at 8.) Williams

---

[1] Collins is not mentioned elsewhere in the complaint, and the court believes that Williams probably intended to refer to Miller here instead.

also asserts a Fourteenth Amendment claim against Miller, although he does not specify the conduct upon which this claim is based.

## II.  DISCUSSION

As noted, the court reviews Williams's claims pursuant to 28 U.S.C. § 1915A(a). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (citation and internal quotation marks omitted).

### A.  Supervisory Liability (Defendant Gilbert)

Williams's Eighth Amendment claim against Gilbert is premised on Gilbert's alleged failure to correct the conduct of his subordinates.  The supporting allegations, however, fail to state a viable claim of supervisory liability under the governing standard. *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (setting forth required elements for a claim of supervisory liability) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).  To state such a claim, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372-74 (4th Cir. 1984) (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

To adequately plead the first element, a plaintiff must allege "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins v. Montgomery*, 751 F.3d at 226 (internal quotation marks omitted). With respect to the second element, "a plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (internal quotation marks omitted).

Williams does not allege any other incidents by Franklin of a similar nature or any facts to show that Gilbert should have known of a widespread problem of using four-point restraints or air conditioning as a "torture tactic," or any of the other alleged violations. And Gilbert apparently was not involved at all in the relevant incidents, according to the complaint. Absent allegations to establish that Gilbert had knowledge of an unreasonable risk of harm of constitutional injury, Williams has failed to state a supervisory claim against him.

**B. Bystander Liability (Defendants Gilbert, Barton, and Hall)**

It appears that Williams also may be trying to hold defendants Gilbert, Barton, and Hall liable under a theory of bystander liability. Under the theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).

Gilbert is not alleged to have been involved at all in any of the actual events. Thus, he cannot be held liable under this theory.

As for Sgt. Hall and defendant Barton, they had limited involvement in the events. Defendant Barton was present when Williams was first removed from his cell and the fire was put out, and when he made a round in the pod between 9:00 and 10:00 p.m., he told Williams that he did not know when he would be released from restraints and that Franklin did not "like" Williams's answer to his questions.

Similarly, Sgt. Hall was present when the fire was being put out inside Williams's cell, and he was present when Franklin questioned Williams about the weapon two or three hours later and said that Williams should be left in the cell and given a couple more hours to think about whether he would answer questions.

It is not clear to the court whether Hall or Barton had any ability to intervene or to release Williams from his restraints. And Franklin's initial decision to use restraints was likely justified, because Williams admits that he set fire to items in his cell and has a weapon on him. But it is at least plausible that keeping Williams in four-point restraints for about ten hours, particularly when coupled with the extremely cold temperatures for at least part of that time, could constitute an Eighth Amendment violation. In particular, if the restraints and temperatures were used simply to get him to answer questions about the fire or the weapon, and not to maintain order, a violation may have occurred. *See Williams v. Benjamin*, 77 F.3d 76, 762–68 (4th Cir. 1996) (repeatedly questioning the use of 4-point restraints for an 8-hour period after a riot and after the plaintiff was maced, and concluding that summary judgment was inappropriate absent additional development of the facts regarding the justification for such prolonged use of the restraints). Thus, the court declines to dismiss either Barton or Sgt. Hall at this time.

### C. Eighth Amendment Claim Against Franklin

As described by Williams, his Eighth Amendment claim against Franklin is based on Franklin's "exposing" him to the very cold weather during his transport and keeping Williams in 4-point restraints in a cold cell with the air conditioning "as a torture tactic" to obtain information. To the extent that Williams's claim is an excessive force claim, the Fourth Circuit in *Williams*, 77 F.3d at 762–68, suggests the claim has been adequately pled. To the extent it is a conditions-of-confinement claim, the Eighth Amendment also protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But "the Constitution does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49.

To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To establish the second element of deliberate indifference, a plaintiff must show that the defendant was personally aware of facts indicating a substantial risk of serious harm and that the defendant must have actually recognized the existence of such a risk. *See, e.g.*, *Farmer*, 511 U.S. at 838–840; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). The plaintiff also must show that the defendant subjectively recognized that his actions were inappropriate in light of that risk. *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)

8

(citation omitted).

Setting the issue of restraints aside, keeping an inmate in extremely cold temperatures without adequate clothing or other means to stay warm can satisfy the first element of such a claim, assuming there is some resulting illness or injury or a grave risk of one. *See Williams v. Ozmint*, No. C/A 3:08-CV-4139-GRA, 2010 WL 3814287, at *7 (D.S.C. Sept. 23, 2010) (collecting authority addressing whether very cold cell temperatures combined with a lack of clothing and a lack of blankets or sheets could support an Eighth Amendment claim); *Scott v. Dep't of Public Safety & Corr. Servs.*, No. L-10-461, 2011 WL 3793376, at *4 (D. Md. Aug. 23, 2011) (explaining that a valid Eighth Amendment claim was stated where plaintiff alleged she suffered chronic pain resulting from frostbite as a result of extremely low temperatures). *But see Johnson v. McCoy*, No. 7:19-CV-00005, 2021 WL 1113377, at *9 (W.D. Va. Mar. 23, 2021) ("[Plaintiff's] complaint of numb feet does not give rise to an Eighth Amendment claim."); *Chance v. Spears*, C.A. No. 2:08-1156, 2009 WL 3768736, at *2 (S.D.W. Va. Nov. 10, 2009) ("Although plaintiff makes conclusory assertions about the potential harm that may be wrought without additional protective clothing, his allegations simply do not rise to the level of extreme deprivation necessary to state a conditions-of-confinement violation.").

Although Williams was in the cold temperatures for between three and six hours (with the air conditioning turned on between 11:30 p.m. and 1 a.m., and his being released between 4:30 a.m. and 5:30 a.m.), he insists that he was in pain, and suffering from hypothermia. He has therefore plausibly pled the first element of his conditions-of-confinement claim.

As to whether Franklin was personally aware of facts indicating a substantial risk of serious harm, Williams also has plausibly pled facts to support this element. Franklin knew that Williams had been transported outside in the cold briefly while only in his boxers. And it is at least alleged in the complaint that Franklin made the decision to turn on the air conditioning as a

9

means to force Williams to answer questions. Additionally, Williams alleges that Franklin was the person who ordered Williams be restrained and who determined when he would be released.

The court concludes that these facts plausibly allege an Eighth Amendment violation against Franklin. Deciding to keep Williams in four-point restraints for nearly ten hours, combined with purposefully exposing Williams to the cold, and solely for the purpose of interrogation, are sufficient to make Franklin aware of a risk of harm to Williams. Thus, the court concludes that Williams has plausibly alleged an Eighth Amendment violation against Franklin arising from his own decisions and actions.

As to Williams's assertion that Franklin should be held liable for failing to adequately supervise or correct Miller's conduct, this claim fails for at least two reasons. First, it is vague in that Williams does not provide information about what Miller did to him. *See infra* Section II-E. Second, the claim fails to allege adequate facts to support a supervisory liability claim. *See supra* at Section II-A (describing elements of supervisory liability claim).

**D. Due Process Claims Against Franklin**

With regard to his Fourteenth Amendment claim, Williams does not explain how his due process rights were violated. Franklin may be arguing either that (1) he was denied due process in conjunction with the disciplinary charges; or (2) his transfer to disciplinary segregation violated his due process rights.

As for his disciplinary charges, Williams does not identify a constitutionally protected liberty or property interest that he lost. Indeed, his complaint indicates that the sole consequence of his charge was a conviction on one charge and the imposition of an $33.00 fine. And many courts, including this one, have held that such small monetary fines do not trigger constitutional due process protections. As several judges of this court have recognized, "small monetary penalties and penalties that do not impose restraint do not impose atypical and significant

10

hardship on a prisoner in relation to the ordinary incidents of prison life and are not constitutionally protected interests under the Due Process Clause." *Roscoe v. Mullins*, No. 7:18CV00132, 2019 WL 4280057, at *3 (W.D. Va. Sept. 10, 2019) (granting summary judgment in defendants' favor as to the due process claim where the only penalty imposed was a $15 penalty), *aff'd on other grounds*, No. 19-7343 (4th Cir. Oct. 28, 2020); *Ferguson v. Messer*, No. 7:15CV00140, 2017 WL 1200915, at *8 (W.D. Va. Mar. 30, 2017) (concluding that three $12 fines did not give rise to a protected property interest); *Bratcher v. Mathena*, No. 7:15CV00500, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding $12 fine did not pose an atypical and significant hardship on the plaintiff in comparison to the ordinary incidents of prison life and so did not constitute a loss of a property interest). *But see Bowling v. Clarke*, No. 7:19CV00453, 2021 WL 440794 (W.D. Va. Feb. 8, 2021) (reaffirming earlier ruling that a $15 fine triggered due process protections, but concluding that defendants were entitled to qualified immunity on this issue).

Like the plaintiffs in *Roscoe*, *Ferguson*, and *Bratcher*, Williams was subjected only to a small fine, a penalty that is insufficient to give rise to a protected property interest in the context of prison life under the rationale of *Sandin*.[2] Because the court concludes that the imposed fine

---

[2] Although the Fourth Circuit has not yet spoken directly on this issue in a published decision, some courts have questioned whether *Sandin*'s analysis—requiring that the particular hardship be "atypical and significant" to create a constitutionally protected interest—applies in the context of property deprivations, given that *Sandin* addressed whether a particular deprivation implicated a liberty interest. *See Anderson v. Dillman*, 824 S.E.2d 481, 483–84 (Va. 2019) (noting the disagreement among federal courts on this issue and discussing the different rationales underlying the decisions). Cases from the Sixth and Tenth Circuits have applied *Sandin* in the context of property rights, while the Third and Fifth Circuits have stated *Sandin* does not control in a case involving a property interest. *Anderson*, 824 S.E.2d at 483 & n.4 (collecting authority); *see also Steffey v. Orman*, 461 F.3d 1218, 1222 n.3 (10th Cir. 2006) (identifying the Second and Fifth Circuits as holding that *Sandin* applies only to liberty interests and the Sixth and Ninth Circuits as suggesting, but not holding, the same). The Fourth Circuit indicated, albeit in an unpublished decision, that *Sandin* is applicable to property interests when it applied *Sandin* to conclude that a prisoner "did not have a constitutionally protected liberty or property interest in his prison job." *Backus v. Ward*, 151 F.3d 1028, 1998 WL 372377, at *1 (4th Cir. 1998) (unpublished); *but cf. Burks v. Pate*, 119 F. App'x 447, 450–51 (4th Cir. 2005) (relying on a since-overruled Tenth Circuit decision for proposition that a prisoner has a protected property interest in his prison account funds and concluding that defendants' removal of $249 from plaintiff's account to pay his hospital bill triggered due process protections).

did not place any atypical and significant hardship on Williams in comparison to the ordinary incidents of prison life, *Sandin*, 515 U.S. at 484, it did not trigger due process protections and any due process claim based on the disciplinary proceedings fail. Regardless, Franklin would be entitled to qualified immunity on this issue, such that Williams could not recover damages from him. *See Roscoe v. Kiser*, No. 7:18-CV-00332, 2020 WL 4677520, at *3 (W.D. Va. Aug. 12, 2020) (holding it was not clearly established in January 2018 that a small fine would trigger constitutional due process protections); *Bowling*, 2021 WL 440794, at *4–*5 (same as to "summer of 2017" and granting defendants qualified immunity on due process claim).

Furthermore, Williams does not identify the role, if any, that Franklin played in those proceedings. Franklin's lack of personal involvement also renders Williams's claim defective as against him.

Lastly, as noted, Williams complains that he was transferred to long-term segregation "with no formal I.C.A. hearing and no formal notification." (Compl. 6.) Again, Williams does not identify the role, if any, that Franklin played in his placement in segregation. Thus, any due process claim against Franklin based on that transfer also must be dismissed.[3]

### E. Claims Against Miller

Lastly, Williams brings claims against Eric Miller, claiming violations of his First, Eighth, and Fourteenth Amendment rights. These claims, however, are all devoid of any specific facts. Instead, he makes only sweeping accusations that Miller engaged in "psychological, emotional, financial, and physical warfare," by retaliating against Williams, and by putting Williams in unspecified "life or death situations." (Compl. 8.) Moreover, as already noted, Miller is not mentioned at all in the factual section of the complaint.

---

[3] Williams's claim also likely fails for other reasons, as well, although the court need not rely on them in light of its ruling that Williams has not alleged sufficient personal involvement.

The only more specific allegations are set forth in his legal claim itself, where Williams states that Miller "obstructed [his] access to the grievance process." (Compl. 8.) But there is no constitutional right to a grievance process. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure."). *See also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *E.g., Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983.").

Thus, Williams's vague allegations that Miller interfered with the grievance process does not state a constitutional claim. All claims against Miller must be dismissed.

### III. CONCLUSION

For the reason set forth above, many of Williams's claims fail to state a claim and must be dismissed. The only claims that will remain in the case are the Eighth Amendment claims against Franklin and the Eighth Amendment bystander liability claims against Barton and Hall. An appropriate order will be entered.

Entered: July 18, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

13