CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 06, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|    Plaintiff, ) | Civil Action No. 7:22-cv-00667 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| CPT. FRANKLIN, *et al.*, ) | Chief United States District Judge |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a prisoner acting *pro se*, brought a lawsuit alleging violations of his constitutional rights during his incarceration at Red Onion State Prison (ROSP). That suit was severed into several actions, including this one. (Dkt. No. 1-1.) Before the court is defendants' motion for summary judgment on the grounds that plaintiff did not exhaust his administrative remedies. (Dkt. No. 22.) Plaintiff was granted an extension of time to respond (Dkt. No. 26), but his second motion for an extension was denied for lack of excusable neglect (Dkt. No. 29). Thus, plaintiff has not filed any response.

For the reasons stated in this opinion, defendants' motion for summary judgment will be granted.

I. BACKGROUND

**A. Plaintiff's Claims**

The allegations in Williams' verified complaint relate to him being housed at Red Onion State Prison. The complaint names five defendants: Capt. Gilbert, Capt. Franklin, Lt. Barton, Sgt. Hall, and Unit Manager Miller. (Compl., Dkt. No. 1.)

According to the complaint, on January 27, 2020, an "incident transpired" where two items of clothing were on fire in plaintiff's cell at ROSP. (Compl. ¶ 10.) Correctional Officer

Hall (not defendant Hall) and Lt. Barton (then a sergeant) removed Williams from his cell. Officer Hall extinguished the fire while Sgt. Hall and Capt. Franklin stood outside the cell with Williams. (*Id.* ¶¶ 11–12.)

Williams was taken to the shower where a strip search revealed that he had concealed a weapon on his person. (Compl. ¶¶ 15, 23.) Williams, wearing only boxer shorts, was escorted from the B-4 shower to the B-3 pod where he was placed in restraints in a cell with "no mattress, suicide smock, or suicide blanket." (*Id.* ¶¶ 16–17.) Capt. Franklin and Sgt. Hall arrived at Williams' cell and asked him about the weapon, but plaintiff refused to answer. (*Id.* ¶ 18.) Between 11:30 p.m. and 1:00 a.m., the air conditioning was turned on, and Williams was so cold that he was "shaking uncontrollably." (*Id.* ¶¶ 20, 22.) Sometime between 2:00 and 3:00 a.m., Capt. Franklin asked Williams about the weapon again, and Williams stated that he bought it but did not know who sold it to him. (*Id.* ¶ 23.) Williams was removed from restraints at approximately 4:30 or 5:30 a.m. (*Id.* ¶ 24.)

In a section labeled "exhaustion of legal remedies," Williams claims that he was "denied of informal complaints" from January 29 through March 20, 2020. (*Id.* ¶ 29.)

On July 18, 2023, the court dismissed all claims against Miller and Gilbert and all remaining claims except the Eighth Amendment claim against Franklin and the bystander liability claims against Barton and Hall. (Dkt. Nos. 9, 10.)

**B. Facts in Support of Defendants' Motion**

In support of their motion for summary judgment, defendants filed the declaration of T. Still, the grievance coordinator responsible for maintaining grievance files at Red Onion. (Still Decl. ¶ 1, Dkt. No. 23-1.)

Virginia Department of Corrections Operating Procedure (OP) 866.1, the VDOC Offender Grievance Procedure, provides an administrative process for resolving inmate issues and complaints. (Still Decl. ¶ 4, Encl. A.) Inmates are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. According to VDOC records, Williams attended an orientation session and received information on the procedure on October 31, 2017. (*Id.* 5, Encl. B.)

Under OP 866.1, an inmate must first try to resolve his issue informally, orally and then in writing by submitting a Written Complaint, which must be submitted within 15 days of the original incident. If the inmate is not satisfied with the result of the informal process or if staff fail to provide a written response to the Written Complaint within 15 days, the inmate may escalate his issue by submitting a Regular Grievance. A Regular Grievance must be submitted within 30 days of the original incident. (*Id.* ¶¶ 6–8.)

To be accepted, a Regular Grievance must comply with the requirements of OP 866.1. If a Regular Grievance is accepted at intake, the Facility Unit Head of the Assistant Facility Unit Head responds at Level I of the review process. If the inmate is dissatisfied with the Level I decision, he may appeal the determination to Level II. For most issues, Level II is the final level of review. Emergency Grievances and Facility Requests are not Regular Grievances under the Grievance Procedure. The exhaustion requirement is met only when a Regular Grievance is accepted at intake and appealed through the highest eligible level without satisfactory resolution. (*Id.* ¶¶ 9–14.)

Williams filed two Written Complaints on February 18, 2020 (ROSP-20-INF-00243, ROSP-20-INF-00244) and one on February 21, 2020 (ROSP-20-INF-00262). (*Id.* ¶ 15.) According to the CORIS Report for ROSP-20-INF-00243, this complaint stated that Red Onion

3

staff had been trying to deny plaintiff's access to court by not properly signing or filling out legal documents, refusing to give him request forms, informal complaints, and regular grievances, and by denying him a legal call pertaining to a hearing set for February 13, 2020. Williams requested that he be moved out of Red Onion's B-Building. (*Id.* ¶¶ 16–17, Encl. C.) On March 17, 2020, the complaint was elevated to a Regular Grievance that was accepted at intake and logged as ROSP-20-REG-00047. (*Id.* ¶ 18, Encl. D.)

Williams' second complaint, ROSP-20-INF-00244 stated that on January 23, 2020, CMC Brace refused to finish notarizing plaintiff's paperwork because he had accused her of smuggling things to members of the Crips and giving his annual review papers to the Crips. This complaint was also elevated to a Regular Grievance that was accepted at intake and logged as ROSP-20-REG-00048 on March 17, 2020. (*Id.* ¶¶ 19–21, Encl. E, F.)

The third complaint, ROSP-20-INF-00262, stated that on February 13, 2020, Williams gave Sgt. Barton a money withdrawal form with a notarized request form and large manila envelope containing a certified mail receipt addressed to Tawane Johnson, Ohio 43125 for $400, the money was deducted on February 13, 2020, and Red Onion refused to give him a copy of his withdrawal form. According to VDOC records, Williams did not elevate ROSP-20-INF-00262 to a Regular Grievance. (*Id.* ¶¶ 22–24, Encl. G.)

VDOC records show that that during the 30 days following the incident described in his complaint, plaintiff submitted no other Written Complaints or Regular Grievances other than ROSP-20-INF-00243, ROSP-20-INF-00244, and ROSP-20-INF-00262. (*Id.* ¶ 26.) Williams also filed two Written Complaints that were received between March 12 and March 20, 2020, and three Written Complaints that he signed on or before March 20, 2020. (*Id.* ¶ 27.) Williams did not file any Written Complaint or Regular Grievance accepted at intake complaining that on

4

January 27–28, 2020, he was exposed to freezing weather when escorted from the B-4 to the B-3 pods; that he had been placed in 4-point restraints inside cell B-201 with no mattress, suicide smock, or suicide blanket; that Capt. Franklin and Sgt. Hall questioned him about the weapon that he had concealed in his buttocks; that the air conditioner was turned on; that he was exposed to cold for the purpose of interrogation; that he was experiencing extreme cold or hypothermia; or that he had been kept in restraints for about ten hours. (*Id.* ¶ 28.)

## II.  ANALYSIS

**A.  Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477

U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**B. Exhaustion**

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). This requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1859 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain

'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 136 S. Ct. at 1859–60). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 136 S. Ct. at 1859. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

Defendants have provided evidence that Williams accessed the grievance procedure in the months following the incident described in the complaint, but Williams did not grieve any of the claims raised in this lawsuit. He did not respond to the motion for summary judgment or provide any evidence to contradict the evidence put forth in support of defendants' motion. While Williams alleges that he was denied access to the grievance procedure, this assertion is directly contradicted by his undisputed grievance activity that took place in January through March of 2020. The allegations in plaintiff's complaint are sworn under penalty of perjury, and a verified complaint can, in some circumstances, defeat a motion for summary judgment. *See VanPelt v. Stanley*, Civil Action No. 7:21cv00139, 2022 WL 520803, at *3 (W.D. Va. Feb. 22, 2022) (explaining that verified complaints by *pro se* prisoners "are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge). However, when a *pro se* plaintiff "fails to respond to a defendant's specific evidence contradicting the conclusory allegations of [the plaintiff's]

7

complaint or submissions, . . . that defendant may be entitled to summary judgment." *Allah v. Engelke*, Case No. 7:20-cv-00755, 2023 WL 2188736, at *5 (W.D. Va. Feb. 23, 2023); *see also Montgomery v. Johnson*, 2007 WL 1960601, at *1 (W.D. Va. July 5, 2007) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)).  Williams has not provided any evidence to create an issue of fact in response to defendants' motion or the Still affidavit.  Therefore, defendants are entitled to summary judgment.

### III.  CONCLUSION

The court will grant defendants' motion for summary judgment in an appropriate order. Entered: March 6, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge